**DRAFT CLOSING INSTRUCTIONS**

CIVIL ACTION NO. 09-10817-RGS

JEREMIAH DAVILA-LYNCH
and LAURA DAVILA-LYNCH

v.

MARK CELIA
and DAVID DICKINSON

August 6, 2012

Members of the jury:

Now that the closing arguments of the lawyers have been presented, the time has come for me to instruct you on the law. My instructions will be in four parts: first, some instructions on the general rules that define and control the duties of a jury in a civil case; second, some instructions that you may find of use in evaluating the evidence that has been presented; third, I will explain the rules of law that you must apply to the facts as you find them, and finally I have some brief guidelines that will govern the conduct of your deliberations.

In defining the duties of the jury, let me first give you a few general rules.

It is your duty to find the facts from all of the evidence in the case. To the facts as you find them you must apply the law as I explain it to you. And you must follow the law as I describe it, whether you personally agree with the wisdom of the law or not. You must do your duty as jurors regardless of any personal likes or dislikes,

opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you and according to the law.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. And you must not read into these instructions, or into anything that I may have said or done during the course of the trial, any suggestion from me as to the verdict you should return. Whatever opinion I might have as to what your verdict should be is utterly irrelevant. The verdict is yours alone, as the finders of fact, to render. While I intend to be as helpful as I can in providing you with the knowledge of the law that you will require to render an intelligent verdict, you will, when I am finished, be surprised – even astonished – at the extent to which the law commits this case to your sole determination as the judges of the facts.

Plaintiff, you will recall, is the name we give to the person who brings a lawsuit. We refer to the person sued as the defendant. The plaintiffs in this case are Jeremiah Davila-Lynch and his wife, Laura Davila-Lynch. The defendants are Mark Celia and David Dickinson, both of whom are City of Brockton police officers. Because the case arose from the same basic cluster of facts, the law permits the case for reasons of efficiency to proceed collectively as between all plaintiffs and all defendants. This does not mean, however, that the plaintiffs and defendants may be judged collectively.

You have to consider the case of each plaintiff and each defendant on its own merits and render a verdict that is appropriate to each party as an individual.

In a civil trial, a plaintiff bears the burden of proving his case by a preponderance of the evidence. This means that he or she must produce evidence which, when considered in the light of all of the evidence in the case, leads you to believe that his or her claims are more likely true than not. If a plaintiff fails to meet this burden, your verdict must be for the defendant.

Let me briefly review with you what is and what is not evidence in a civil case.

Evidence is typically presented at a trial in one of four ways.

First, through the sworn testimony of witnesses, both on direct and on cross-examination.

Second, through physical objects, like documents and photographs, that are identified by a witness, and admitted as exhibits during the trial.

Third, by answers to interrogatories and admissions by parties.

And fourth, by stipulation, or agreement among the parties that certain facts are true and need not be independently proven as such at trial. The parties, for example, have stipulated that at all times the officers were acting pursuant to their official status and therefore acting under the color of law.

Certain things are not evidence and should have no influence on your verdict.

1. Arguments and statements by lawyers, as I have cautioned several times, are not evidence. What the lawyers have said over the course of the trial you may find helpful, even persuasive, in reaching a judgment, but the facts are to be determined from your own evaluation of the testimony of the witnesses, the exhibits, and any reasonable inferences that you choose to draw from the facts as you find them.

2. Questions to the witnesses are not evidence. They can only be considered in the sense that they give context or meaning to a witness's answer.

3. Objections to questions are not evidence. Attorneys, as I explained, have a duty to their clients to object when they believe that a question is improper under the rules of evidence. You should not be influenced by the fact that an objection was made or by the way I ruled on it. If I sustained the objection, you should ignore the lawyer's question, and any assertion of fact it might have contained. If I overruled the objection, you should treat the witness's answer like any other.

4. Testimony that I excluded, struck, or that I instructed you to disregard is not evidence. You should also, as I have cautioned, ignore editorial comments made by the attorneys during their presentations, particularly those intended to characterize the credibility of the testimony of witnesses. Whether or not a witness's testimony was believable on any particular point is a determination that only you can make.

5. Notes, if you have kept them, and most of you have, are not evidence. They are a personal memory aid to be used to refresh your recollection of the evidence during the deliberations.

6. Evidence of prior misconduct on the part of Officer Wilcox was admitted only for purposes of your evaluation of the credibility of his testimony at this trial. The law does not permit instances of prior misconduct to be used to suggest a propensity to engage in such conduct and you may not consider this evidence for that purpose.

7. Finally, anything you may have seen or heard outside the courtroom during the course of the trial is not evidence. You must decide the case based solely on the evidence offered and received during the trial.

Regardless of the way in which evidence is presented, it comes in one of two forms, as either direct or as circumstantial evidence. Direct evidence is direct proof of a fact, usually presented through the testimony of a person who claims to have been an eyewitness to an event or a participant in a conversation. When you evaluate direct testimony your decision is fairly straightforward. Do you believe that what the witness has told you is accurate? Circumstantial evidence, on the other hand, is the proof of a chain of circumstances, or a set of facts, from which you could infer or conclude that another fact is true, even though you have no direct evidence of that fact.

For instance, if you were to awake in the morning and, even though the day was bright and clear, see puddles of water on the street, you might draw the inference that it had rained during the night even though your sleep had been uninterrupted. In other words, the fact of rain is an inference that could be reasonably drawn from the presence of water on the street. An inference may be drawn, however, only if it is reasonable and logical, and not if it is speculative or based on conjecture. If for example, you observed puddles of water on your street, but not on any other street in your neighborhood, other facts, like a broken water main, or if you live in the suburbs, a neighbor's malfunctioning sprinkler system, might explain the presence of water. In deciding whether to draw an inference, you must look at and consider all of the facts in the case in the light of reason, common sense, and your own life experience.

Neither type of evidence, direct or circumstantial, is considered superior or inferior to the other. Either or both types of evidence may be considered in reaching your verdict and may be given whatever weight you as the finders of fact deem that evidence to be worth.

Most evidence received at trial is offered through the testimony of witnesses. As the jury, you are the sole judges of the credibility of these witnesses. If there are inconsistencies in the testimony, it is your function to resolve any conflicts, and to decide where the truth lies.

You may choose to believe everything that a witness said, or only part of it, or none of it. If you do not believe a witness's testimony that something happened, that of course is not evidence that it did not happen. It simply means that you must put aside that testimony and look elsewhere for credible evidence before deciding where the truth lies.

Often it may not be so much what a witness says, but how he or she says it that might give you a clue whether or not to accept his or her version of an event as believable. You may consider a witness's character, his or her appearance and demeanor on the witness stand, his or her frankness or lack of frankness in testifying, whether the witness was contradicted by anything that he or she said before the trial, and whether his or her testimony seems reasonable or unreasonable, probable or improbable, in light of all the other evidence in the case. You may take into account how good an opportunity the witness had to observe the facts about which he or she testifies, the degree of intelligence the witness shows, and whether his or her memory seems accurate. You may also consider the witness's motive for testifying, whether he or she displays any bias in doing so, and whether he or she has any interest in the outcome of the case. Now simply because a witness has an interest in the outcome of the case does not mean that the witness is not trying to tell you the truth as he or she recalls it or believes it to have been. But a witness's interest in the case is a factor that

you may consider along with everything else. You may also consider the fact that a witness may be perfectly sincere in his or her account of an event and simply be mistaken as to the truth.

The weight of the evidence does not depend on the number of witnesses testifying for one side or the other. You must determine the credibility of each witness who testified, and then reach a verdict based on all of the believable evidence in the case.

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things, or get confused, or remember events differently. Memory is not always reliable, and when someone recounts a story twice, it will seldom be identical in every detail, unless it is a memorized lie or the witness is possessed of extraordinary perception and recall. It is for you to decide whether any contradictions in a witness's testimony are innocent lapses of memory or intentional falsehoods. That may depend on whether important facts or small details are at issue, and how important the facts might have appeared to the witness at the time they were perceived.

## THE CIVIL RIGHTS ACT

Let me now turn to the legal claims in the case. The Federal Civil Rights Act is codified as 42 U.S.C. § 1983. It states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To establish a claim under section 1983, a plaintiff must prove by a preponderance of the evidence four things:

(1) That a defendant acted under color of state law;

(2) That a defendant's conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States;

(3) That a defendant's acts were done intentionally or with reckless indifference to the plaintiff's rights; and

(4) That the defendant's acts were a proximate or substantial cause of damages to the plaintiff.

Acting under color of law means acting or purporting to act in the performance of official duties. The parties do not dispute that the defendants in this case, were at all relevant times acting pursuant to their authority as Brockton police officers. In other words, the first statutory element has been satisfied.

Mr. Davila-Lynch must prove that one or more of the defendants' actions deprived him of a right secured by the Constitution or laws of the United States, in this case, the Fourth Amendment right to be free from the unlawful seizure of his person by

9

an officer of the State, and the Fourteenth Amendment right to the equal protection of the laws. Let me begin by explaining the law of arrest, as it is relevant not only to the Fourth Amendment claim, but also to Mr. Davila-Lynch's common-law claim of false imprisonment.

Police officers fill a number of functions in society, some of which are community functions only tangentially related to their more familiar role as criminal investigators. Their major task, however, is to prevent crimes or, where a crime has been committed, to apprehend the person or persons who are responsible. If the officer believes that a crime has been or is about to be committed, he may seize or arrest the person upon whom the suspicion of criminal activity has focused.

In the first of his constitutional claims, Mr. Davila-Lynch invokes the right secured by the Fourth Amendment to be free from arbitrary arrest. The Fourth Amendment to the Constitution states that "the right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." An arrest is an unreasonable seizure when it is made without probable cause.

Let me explain what is meant by the terms "arrest" and "probable cause." An officer effects an arrest of a person "by laying his hand on him for the purpose of arresting him, though he may not succeed," or as our Supreme Court has summarized it, "an arrest is effected by the slightest application of physical force." A police officer

10

is permitted to make an arrest only if he has probable cause to do so. Probable cause means reasonable cause, something more than a hunch or a mere suspicion, but something much less exacting than proof beyond a reasonable doubt, the standard we apply in determining whether someone is guilty of a crime, or for that matter, even proof by a preponderance of the evidence, the standard we apply in this case. Probable cause rather is concerned with probabilities. Thus, the fact that a person may not in fact be guilty of a crime does not invalidate an officer's judgment that he has grounds to make an arrest.

You must ask whether the facts available to the officers at the time they arrested Mr. Davila-Lynch would have warranted an officer of reasonable caution in the belief that he had committed one or more of the crimes of possessing a firearm while intoxicated, disorderly conduct, or interfering with a police officer in the execution of his duties. If they would, the arrest was proper, even if in a technical or legal sense, the officers are later proven to have been wrong. If on the other hand, the officers' actions were not objectively reasonable, the arrest was unlawful, and no amount of good faith on their part would make it otherwise.

It may be helpful to you in making an assessment of the existence of probable cause for an arrest, if I briefly describe the offenses for which Mr. Davila-Lynch was arrested. Possessing a firearm while intoxicated means having a license to carry a

loaded and operable firearm, but doing so while under the influence of alcohol or other drug.  Disorderly conduct is intentional conduct that is intended to disturb the public tranquility or alarm and provoke others.  It includes fighting, threatening, or tumultuous behavior – that is, noisy behavior that attracts and provokes others.  It does not, however, include mere agitated behavior or verbal protests over the way police are conducting themselves. To interfere with a police officer means intentionally hampering or obstructing the performance of a police officer's duties, such as during the investigation of a crime or an arrest.  It would be sufficient if the officers had reasonable cause to arrest Mr. Davila-Lynch for at least one of these three offenses.

In assessing probable cause, the focus must be on what a defendant officer knew at the time of the arrest and not on subsequent events over which he had no control.  For example, the fact that the charges against Mr. Davila-Lynch were ultimately dismissed is not a factor in your determination whether the defendants had probable cause on May 20, 2006, to arrest Mr. Davila-Lynch.  As I explained earlier, this is because the quantum of evidence necessary to establish probable cause involves a far lesser standard of proof than proof beyond a reasonable doubt, the standard that determines whether a person is guilty of a crime, and because of the many discretionary factors that a court or a prosecutor might bring to bear in deciding whether or not to proceed with the trial of a case.

The test to be applied is an objective one – we are concerned with what a reasonable police officer in a defendant's position, knowing what he knew on May 20, 2006, would have done. A defendant's subjective state of mind or possible motive has no bearing on an assessment of the existence of probable cause. In assessing probable cause, a court and jury are also guided by the collective knowledge or "fellow officer" rule, that is, when police are engaged in a collaborative effort, the knowledge of each officer may be "pooled" in determining whether the arresting officer possessed probable cause. If the investigation leading to the arrest is a collaborative effort, the collective knowledge rule applies even if the arresting officer is not made fully aware of all of the information available to the officers at the time the arrest is made.

Mr. Davila-Lynch's second claim is a violation of his right under the Fourteenth Amendment of the United States Constitution. It provides that: "No state shall deny to any person within its jurisdiction the equal protection of the laws." If defendants, even if they did have reasonable cause, would not have arrested Mr. Davila-Lynch but for the fact that he is African-American, his right to equal protection under the law was violated.

To satisfy the third element, Mr. Davila-Lynch must prove that one or more of the officers acted intentionally or with reckless indifference to his right to be secure from any unreasonable seizure of his person and his right to the equal protection of the law.

An act is intentional if it is done knowingly, that is, if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or other innocent reason. An act is reckless if it is done in conscious disregard of its probable consequences.

The fourth element that plaintiffs, that is, Mr. and Mrs. Mr. Davila-Lynch, must prove is that a defendant's acts were a proximate cause of injuries or damages that he or she suffered. Proximate cause means that there must be a causal connection between a defendant's acts and a plaintiff's injuries. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing an injury, or stated another way that the injury was a reasonably foreseeable consequence of a defendant's acts, and but for a defendant's acts the injury would not have occurred.

## FALSE IMPRISONMENT

Mr. Davila-Lynch also brings a state-law claim, that of false imprisonment. To establish a claim of false imprisonment in Massachusetts, a plaintiff must prove by a preponderance of the evidence five things: (1) that a defendant intentionally; (2) and without justification; (3) confined the plaintiff; (4) directly or indirectly; and (5) the person confined was conscious of such confinement or was harmed as a result.

A defendant is liable only if he intentionally imposes a restraint on the plaintiff. An illegal arrest accompanied by intentional confinement may be the basis for an action of false imprisonment. Here, acting without justification means that a defendant lacked

14

probable cause (as I defined it for you earlier) to make the arrest and, therefore, was not justified in imposing a restraint on the plaintiff's liberty. Unlike the federal Civil Rights Act, which requires the plaintiff to prove a lack of reasonable cause, under the common-law, the defendant officers are required to prove by a preponderance of the evidence that there was probable cause to make the arrest. Confinement is commonly described as a general restraint on the plaintiff's freedom of movement. The best example of direct confinement is an arrest; indirect confinement occurs when a defendant instigates, or causes, an unlawful restraint of another – such as when a defendant directs another to make an arrest. One is also not subjected to a false imprisonment unless he is conscious of the confinement or suffers some resulting harm.

## DAMAGES

Let me now turn to the issue of damages. In so doing, I am not in any way attempting to convey any suggestion to you as to the verdict you should return. It is simply easier that I instruct you fully now, rather than interrupt your deliberations later with a second set of instructions should they become necessary.

If you find that either or both of the officers violated one or more of the plaintiffs' constitutional rights, and thereby caused him or her damages, you will then assess the amount that you find to be justified as full, just, and reasonable compensation for the damages caused to a plaintiff by that conduct. The purpose of the law in awarding

damages is to compensate an injured person for losses he or she incurred because of another's wrongful conduct. The object, as best as money can accomplish it, is to restore the injured person to the position he or she would have been in had the injury not occurred. The purpose is not to reward the plaintiff or to punish the defendant. The law does not punish anyone because of an accident, nor does the law compensate where a defendant has done no wrong, no matter how severely a plaintiff is harmed.

There is no special formula for assessing compensatory damages. It is your obligation to determine what is fair, adequate, and just. You must be guided by your common sense and your conscience in translating into dollars and cents that amount which will fairly and reasonably compensate plaintiffs for any injuries that they have suffered.

In determining the amount of damages Mr. Davila-Lynch is entitled to recover, you should take into consideration any pain and suffering. Pain and suffering are of two types: physical pain and suffering, and mental pain and suffering. Mental pain and suffering includes any and all nervous shock, anxiety, embarrassment, humiliation, or mental anguish resulting from any injury, including any future suffering that you find to be causally related to a defendant's conduct and any lost of the ordinary pleasures of life. You may also compensate Mr. Davila-Lynch for any out-of-pocket expenses that he incurred because of a defendant's conduct. In this case, these are stipulated as

$\_\_\_\_\_ in legal fees and costs paid by Mr. Davila-Lynch to defend the consequences of the arrest and to seek reinstatement as a Federal Air Marshal.

If you find that Mr. Davila-Lynch did not suffer any actual damages, but was nonetheless deprived of a constitutional right because of an officer's conduct, you may award him nominal damages. Nominal damages are token damages, assessed at one dollar, that are meant to signify that a plaintiff's rights were technically violated even though he or she suffered no compensable loss or injury.

You may also make a separate and additional award of exemplary or punitive damages. You may award punitive damages even though you find that a plaintiff is entitled only to nominal damages. The issue of punitive damages is committed to the discretion of the jury which may, or may not, in the exercise of that discretion, decide to award such damages. Punitive damages are awarded to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant or others in a similar situation from engaging in such conduct in the future.

You may, however, award a plaintiff punitive damages only if you find that the acts of a defendant were malicious or wanton, that is, were motivated by evil intent, or undertaken with reckless or callous indifference to a plaintiff's protected rights. A plaintiff has the burden of proving, by a preponderance of the evidence, that a defendant in fact acted maliciously or wantonly. It is not enough to simply show that a defendant's

acts were objectively unreasonable. A plaintiff must show that the defendant was aware of the risk that his acts were in violation of federal law.

If you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them. In making this decision, you should consider the underlying purpose of punitive damages. You should consider whether the defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages standing alone are likely to deter or prevent a defendant or others like him from performing wrongful acts in the future.

In addition to the claims for damages brought on behalf of Mr. Davila-Lynch, his wife Laura seeks damages for loss of consortium. A claim of loss of consortium is a claim for the loss of society and companionship caused to a spouse as the result of a third party's negligence. This includes any loss of affection, solace, comfort, and moral support, and any restrictions on the wife's social and recreational life that would have been enjoyed but for the husband's injury. Obviously, you may not consider the loss of consortium claim unless you had decided to award actual damages to Mr. Davila-Lynch on his common-law claim of false imprisonment. The federal Civil Rights Act does not provide for the bringing of a claim of loss of consortium. As with negligence

in general, there is no special formula for measuring a fair award for a loss of consortium. You must be guided by your common sense, good judgment, conscience, and life experience.

## **DELIBERATIONS**

Finally, let me say a few words about your deliberations.

Each of you must decide the case for yourself, but you should do so only after considering all of the evidence, after discussing it fully with the other jurors, and after listening to the views of your fellow jurors. Do not be afraid to change your opinion if, after hearing the opinions of your fellow jurors, you are convinced that your initial conclusion was wrong. But do not come to a decision simply because other jurors insist that it is right, nor surrender an honest belief about the weight and effect of the evidence simply for the expedience of reaching a verdict.

This case has taken a great deal of time and effort on the part of the attorneys involved despite the relative brevity of the trial. There is no reason to think that another jury would be better qualified to render a true and just verdict. The parties in this case are eager to bring the case to closure. It is important therefore that you reach a verdict if you can do so conscientiously. Your verdict must be unanimous as to each of the special questions I am going to ask you to answer. Your answers will be recorded on the verdict slip by the juror I will select as your foreperson.

[SELECT FOREPERSON]. As foreperson, you will have the same voice and the same vote as the other deliberating jurors. You will act as the moderator of the discussion and will serve as the jury's spokesperson. Your most important obligation is to insure that any juror who wishes to be heard on any material issue has a full and fair opportunity to be heard by his or her fellow jurors. When the jury has reached a verdict, you will fill in the appropriate answers, sign and date the verdict slip, and inform the court officer that the jury is ready to return to the courtroom.

If it becomes necessary during your deliberations to communicate with me, you may do so by sending a note through the court clerk signed by your foreperson. No member of the jury should ever attempt to communicate with me except by such a signed writing.